UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GERRON McMILLER,

Petitioner,

v.

C. CARTER, WARDEN,

Respondent.

Civil Action No. 24-1181-TDC

**MEMORANDUM OPINION**

Petitioner Gerron McMiller, an inmate confined at Federal Correctional Institution–Cumberland ("FCI–Cumberland") in Cumberland, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in which he asserts constitutional and statutory violations arising from the failure of the Federal Bureau of Prisons ("BOP") to apply to his sentence certain credits to which he believes he is entitled under the First Step Act of 2018 ("FSA"), Pub. L. No. 115–391, 132 Stat. 5194, 5196–98. The Petition is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DENIED.

**BACKGROUND**

On October 4, 2016, McMiller was sentenced in the United States District Court for the Northern District of Ohio to a term of imprisonment of 120 months for the crime of possession of a firearm by a felon. His projected release date is June 20, 2027. McMiller's Petition centers on the earning of and application of credits pursuant to the FSA.

I.      **First Step Act**

Generally, federal inmates may earn good time credits toward service of their sentence. 18 U.S.C. § 3624(b). The FSA expanded the availability of such credits so that inmates may now receive a maximum of 54 days of good time credits per year of their imposed sentence. *See id.*

The FSA also directed the BOP to develop a system to assess and address recidivism among inmates, including by providing programs to reduce recidivism and incentives to participate in such programs. *See* 18 U.S.C. § 3632(a). Specifically, the FSA directed the BOP to develop a risk and needs assessment system ("the System") for (1) determining an inmate's risk of recidivism; (2) assessing an inmate's risk of violence or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) assigning an inmate to appropriate EBRRs and productive activities ("PAs") as needed; (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. *Id.* Pursuant to the System, BOP has developed and implemented a recidivism screening tool known as the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") which is used to conduct an initial intake risk and needs assessment for each prisoner. 18 U.S.C. § 3621(h)(1)(A).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive earned time credits ("FSA Time Credits") to be applied to allow for earlier release to pre-release custody or to supervised release. *See* 18 U.S.C. § 3632(d)(4)(A); *id.* § 3624(g). Generally, a prisoner may earn 10 days of FSA Time Credits for every 30 days of successful participation in an EBRR or PA. 18 U.S.C. § 3632(d)(4)(A)(i). In order to have such FSA Time Credits applied to allow for such earlier release, an inmate must have: (1) "earned time credits . . . in an amount that

2

is equal to the remainder of the inmate's imposed term of imprisonment"; (2) "shown through the periodic risk reassessment a demonstrated recidivism risk reduction" or that the inmate "has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment"; (3) "had the remainder of the prisoner's imposed term of imprisonment computed under applicable law"; and (3) "been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner" or "had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison." 18 U.S.C. § 3624(g); *see also* 28 C.F.R. § 523.44(b), (c).

For FSA Time Credits to be applied to allow for early release to supervised release, the following additional conditions must be satisfied:

> (1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;
>
> (2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and
>
> (3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

28 C.F.R. § 523.44(d).

## II. McMiller's FSA Time Credits

On April 27, 2023, McMiller was deemed eligible to receive FSA Time Credits based on his current offenses of conviction. As of September 4, 2024, McMiller had earned 365 days of FSA Time Credits towards his statutory release date and 325 days towards pre-release custody. However, based on his PATTERN results and throughout his time at FCI–Cumberland, McMiller has been assessed as a high recidivism risk. This assessment has been due in part to the points assigned to his age, criminal history, prior violent offense, history of escape, and in-prison incident

reports, which are offset in part by points for his level of education, completed programs, and prison work.

As a result of his high recidivism risk, McMiller's FSA Time Credits will not be applied until his recidivism risk level is lowered to the levels and in the manner set forth in the statutory and regulatory requirements referenced above, or he successfully petitions the warden for an exception. *See* 18 U.S.C. § 3624(g); 28 C.F.R. § 523.44(b)-(d). Respondent states that when McMiller reaches the required low or minimum recidivism risk level, his FSA Time Credits will be applied to his sentence.

## DISCUSSION

In the Petition, McMiller alleges that the failure to apply his FSA Time Credits to his sentence violates the Ex Post Facto Clause of Article I of the United States Constitution because it is improper to calculate his recidivism risk based on his criminal history, which predates the enactment of the FSA. He also argues that the BOP's application of the System and PATTERN violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. In his reply brief, McMiller for the first time asserts a violation of the Due Process Clause of the Fifth Amendment to the Constitution and also argues that as a result of the United States Supreme Court's holding in *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244 (2024), courts need not defer to the BOP's determination that it will consider criminal convictions that occurred prior to the enactment of the FSA as a factor in the PATTERN tool. McMiller therefore requests that this Court order the BOP to apply his FSA Time Credits to his sentence.

### I. Constitutional Claims

McMiller's claim that the current implementation of the FSA amounts to an *ex post facto* law is without merit. An *ex post facto* law creates a more onerous punishment that did not exist at

the time the prisoner committed the crime. *See Dobbert v. Florida*, 432 U.S. 282, 294 (1977) ("It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law."); *see National Assoc. for Rational Sexual Offense Laws v. Stein*, 112 F.4th 196, 202–23 (4th Cir. 2024) (stating that the Ex Post Facto Clause "forbids the application of any new punitive measure to a crime already consummated"). At the time that McMiller was sentenced in 2016, the FSA had not yet been enacted, so the FSA Time Credits that could be earned and potentially applied to reduce a sentence were not yet available. By making such credits potentially available, and creating a potential for earlier release that had not existed at the time that McMiller committed either the crime of conviction or any of the crimes underlying his prior convictions, Congress enacted, and the BOP has implemented, a more lenient law that therefore cannot be deemed to be an *ex post facto* law. At worst, if an inmate's prior conviction prevents the application of FSA Time Credits, the end result would be the same period of incarceration that the inmate would have served had the FSA never been enacted. Because neither the relevant provision of the FSA nor the BOP's implementation of it results in greater punishment for the present crime of conviction or any prior convictions, the Court finds that there is no *ex post facto* violation. *See Peugh v. United States*, 569 U.S. 530, 539 (2013) (stating that a determination of whether there is an *ex post facto* violation requires inquiry into "whether a given change in law presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes'" (quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000)); *United States v. Davenport*, 445 F.3d 367, 369 (2006) (stating that the Ex Post Facto Clause prohibits imposing "additional punishment to that . . . prescribed" at the time that the offense was committed), *overruled in part on other grounds by Irizarry v. United States*, 553 U.S. 708, 712 n.1, 716 (2008).

In referencing the Due Process Clause in his reply brief, McMiller appears to assert a due process violation based on the same argument underlying his *ex post facto* claim: that the consideration of past criminal history in assessing recidivism risk is improper. Because the Court has found no violation of the Ex Post Facto Clause, any such due process claim also necessarily fails.

To the extent that McMiller may also be claiming a due process violation arising from the inclusion in his recidivism calculation of a certain number of points for one of his prior convictions, *see* Reply at 5, ECF No. 8, that argument fails because he has not demonstrated a protected liberty interest in that calculation or the application of FSA Time Credits. When considering whether a viable due process claim has been asserted, the first inquiry is generally whether "there exists a liberty or property interest of which a person has been deprived, and if so," a court must consider "whether the procedures followed by the [Government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). This is not a case in which McMiller was granted good time credits pursuant to a statutory requirement and then had them revoked without adequate procedural protections. *See Lennear v. Wilson*, 937 F.3d 257, 268 (4th Cir. 2019) (stating that due process protections apply to prison disciplinary proceedings that could affect a liberty interest such as the interest in avoiding the loss of good time credits); *Tyler v. Hooks*, 945 F.3d 159, 173 (4th Cir. 2019) (finding a due process violation based on the rescission of good time credits where the disciplinary proceeding leading to the loss of credits violated due process). Here, where the FSA and the implementing regulations expressly condition the application of FSA Time Credits on an assessment of recidivism as well as other considerations, *see* 18 U.S.C. § 3624(g); 28 C.F.R. § 523.44, "[t]he statute and accompanying regulations betray no expectation that [FSA Time] [C]redits could reasonably be regarded as an entitlement, rather than as a benefit that a prisoner

6

might or might not be able to earn at various times during his detention" so as to "give rise to a protected liberty interest." *White v. Warden*, No. DKC-22-2371, 2023 WL 4867562, at *10 (D. Md. July 31, 2023) (quoting *Fiorito v. Fikes*, No. 22-CV-0749, 2022 WL 16699472, at *5–6 (D. Minn. Nov. 3, 2022)) (finding no protected liberty interest arising from a lost opportunity to earn FSA Time Credits). Further, McMiller has never had these FSA Time Credits applied to his sentence and thus has not been deprived of them without due process. He thus has not stated a viable due process claim.

## II.     Administrative Procedure Act

McMiller also asserts that these same facts establish a violation of the APA. Generally, a federal prisoner may assert an APA challenge to a BOP action through a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* 5 U.S.C. § 703. The Petition, however, is unclear as to the specific APA argument. To the extent that McMiller is asserting, pursuant to the APA, that the BOP's actions are "contrary to [a] constitutional right," 5 U.S.C. § 706(2)(B), in that they violate the Ex Post Facto Clause or the Due Process Clause, such a claim fails because, as discussed above, the Court finds no such constitutional violation. *See supra* part I.

To the extent that McMiller is asserting that the BOP's System, including its use of PATTERN and consideration of prior convictions in assessing recidivism risk, is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(A), (C), such an argument also fails. First, the statute in question here unambiguously mandates that only inmates with low and minimum recidivism scores are eligible to have FSA Time Credits applied toward pre-release custody or supervised release. *See* 18 U.S.C. § 3624(g)(1). The BOP's implementing regulations almost completely track the language of the statute, including as to the

requirement that the inmate not be at a high risk of recidivism in order to have the FSA Time Credits applied. *See* 28 C.F.R. § 523.44. The BOP's use of its System, including PATTERN, to assess recidivism based in part on the prisoner's criminal history is consistent with the statutory requirement that the Attorney General develop a "risk and needs assessment system" that, among other things, will "determine the recidivism risk of each prisoner" and "classify each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. § 3632(a). The consideration of criminal history as part of the recidivism assessment is also consistent with this statutory authority, and McMiller has identified no basis or authority upon which the Court could conclude that such consideration is arbitrary or capricious. The Court therefore finds that the BOP's implementation of the FSA's provisions relating to FSA Time Credits, including its consideration of criminal history in the assessment of recidivism, is not arbitrary, capricious, an abuse of discretion, or contrary to law, or outside of statutory authority. *See* 5 U.S.C. § 706(2)(A), (C).

McMiller's citation to *Loper Bright* does not alter this conclusion. *Loper Bright* overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which held that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer" based on "the principle of deference to administrative interpretations," such that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844. Under *Loper Bright*, courts now must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and "need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 144 S. Ct. at 2273. Here, the Court's conclusion, that the BOP's implementation of the

8

statutory requirements relating to FSA Time Credits, including the consideration of criminal history in the assessment of recidivism, is consistent with the statute and neither arbitrary nor capricious, is based on the Court's independent assessment and is not predicated on any deference to the agency. Accordingly, the Court finds that McMiller's APA challenge fails even upon consideration of *Loper Bright*.

Finally, to the extent that McMiller is challenging the BOP's specific adjudication of whether to apply the FSA Time Credits to him at this time, including the calculation and assessment of his recidivism risk, such a challenge is barred by 18 U.S.C. § 3625, in which Congress specified that the provisions of the APA governing judicial review, 5 U.S.C. §§ 701–706, are inapplicable to "the making of any determination, decision, or order under this subchapter," consisting of 18 U.S.C. §§ 3621 to 3626, which includes an assessment under 18 U.S.C. § 3624(g) of whether a federal inmate can have FSA Time Credits applied to his sentence. 18 U.S.C. § 3625. This Court therefore may not consider such a challenge. *See Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998) (stating that "§ 3625 precludes judicial review of agency adjudicative decisions"); *Hubbard v. Carter*, No. BAH-24-729, 2025 WL 524117, at *4 (D. Md. Feb. 18, 2025) (holding that pursuant to 18 U.S.C. § 3625, the court could not review the BOP's adjudication of the inmate's recidivism risk through PATTERN and its consideration of his criminal history in that determination); *see also Belcher v. Stewart*, No. CCB-18-3471, 2020 WL 512731, at *3-4 (D. Md. Jan. 30, 2020) (holding that 18 U.S.C. § 3625 precludes judicial review of a BOP adjudication consisting of "retrospective particularized fact-finding for each prisoner" and therefore declining to hear an inmate's claim that he was improperly denied early release pursuant to 18 U.S.C. § 3621, which generally allows for such release for prisoners who completed the Residential Drug Abuse

9

Treatment Program). Thus, any challenge to the individualized determination relating to McMiller fails.

The Court notes, as Respondent acknowledges, that McMiller can still secure application of his earned FSA Time Credits upon a determination, based on future calculations and assessments, that he is no longer at a high risk for recidivism and meets the applicable statutory and regulatory requirements relating to his risk of recidivism.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DENIED. A separate Order shall issue.

Date: October 29, 2025

THEODORE D. CHUANG
United States District Judge